UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **QUAN MORGAN**, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **CAPTAIN WATSON**, Connecticut Department of Correction, in his Official Capacity and Individual Capacity, | : | CASE NO.: |
| **LIEUTENANT KOELLMER**, Connecticut Department of Correction, in his Official and Individual capacities, | : | |
| **LIEUTENANT HERNANDEZ**, Connecticut Department of Correction, in his Official Capacity and Individual Capacity, | : | |
| **LIEUTENANT DOMITRZ**, Connecticut Department of Correction, in his Official Capacity and Individual Capacity, | : | |
| **OFFICER YAHARY**, Connecticut Department of Correction, in his Individual Capacity, | : | |
| **OFFICER PADIN**, Connecticut Department of Correction, in his Individual Capacity, | : | |
| **OFFICER BACCHUS**, Connecticut Department of Correction, in his Individual Capacity, | : | |
| **OFFICER MATEO**, Connecticut Department of Correction, in his Individual Capacity, | : | |
| **OFFICER KLINGENBERG**, Connecticut Department of Correction, in his Individual Capacity, | : | |
| **OFFICER BOSWELL**, Connecticut Department of Correction, in his Individual Capacity, | : | |
| **OFFICER MUSCARO**, Connecticut Department of Correction, in his Individual Capacity, | : | |
| **OFFICER HOWARD**, Connecticut Department of Correction, in his Individual Capacity, | : | |
| **OFFICER JONES**, Connecticut Department of Correction, in his Individual Capacity, | : | |
| **OFFICER NOGUEIRA**, Connecticut Department of Correction, in his Individual Capacity, | : | |
| **OFFICER BUGBEE**, Connecticut Department of Correction, in his Individual Capacity, | : | **JURY TRIAL DEMANDED** |
|     Defendants. | : | FEBRUARY 24, 2020 |

# COMPLAINT

## JURISDICTION

1. Jurisdiction over Morgan's claims is based on 42 U.S.C. §§ 1983, 1988, 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367 (pendent claims).

2. Morgan brings this action claiming deprivations of rights to be free from deliberate indifference and cruel and unusual punishment under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States of America.

3. Venue is proper under 28 U.S.C. § 1391 because all activities relevant to this Complaint occurred in this District.

## PARTIES

4. Quan Morgan was a sentenced inmate in the custody of the Connecticut Department of Correction (DOC) at all times relevant to this Complaint.

5. Captain Watson was a supervisor employed by the DOC and assigned to Cheshire Correctional Institution (CCI) at all times relevant to this Complaint.

6. Captain Watson was responsible for Morgan's safety during January through March of 2017 and at all times acted under color of state law.

7. Lieutenant Koellmer was a supervisor employed by the DOC and assigned to CCI at all times relevant to this Complaint.

8. Lieutenant Koellmer was responsible for Morgan's safety and care on February 22 and 23, 2017 and at all times acted under color of state law.

9. Lieutenant Hernandez was a supervisor employed by the DOC and assigned to CCI at all times relevant to this Complaint.

10. Lieutenant Hernandez was responsible for Morgan's safety and care on February 22 and 23, 2017 and at all times acted under color of state law.

11. Lieutenant Domitrz was a supervisor employed by the DOC and assigned to CCI at all times relevant to this Complaint.

12. Lieutenant Domitrz was responsible for Morgan's safety in January and February of 2017 and at all times acted under color of state law.

13. Officers Yahary, Padin, Bacchus, Mateo, Klingenberg, Boswell, Muscaro, Howard, Jones, Nogueira, and Bugbee were employed by DOC and assigned to CCI at all times relevant to the Complaint and at all times acted under color of state law.

## ALLEGATIONS OF FACT :

14. Morgan transferred to CCI in 2016 and was initially housed in an area of the facility identified as East Block 2.

15. When Morgan obtained a job in January 2017, he was moved to a cell with Inmate J.B. ("J.B.") in an area of the facility known as East Block 3.

16. While housed with J.B., Morgan observed J.B. sharpening a toothbrush on the window screen of the cell.

17. J.B. stated to Morgan that he would stab anyone who annoyed him.

18. Morgan reported this dangerous behavior to Captain Watson and expressed fear for his safety because J.B. was talking to himself, threatening others, and making weapons.

19. Morgan then submitted a request form on or about February 17, 2017, to Captain Watson repeating his concerns for his safety and requesting that DOC move him or J.B. from the cell.

20. Captain Watson informed Morgan that his request for a separate cell from J.B. constituted a refusal of housing.

3

21. Captain Watson threatened to send Morgan to the Restricted Housing Unit (RHU), or segregation, where visits and phone calls with family are prohibited.

22. J.B. had a recorded history with DOC of violence toward staff and other inmates that warranted his housing in a single-inmate cell.

23. On February 22, 2017, at approximately 12:45 am, while Morgan was sleeping, J.B. threw hot water from a hot pot on Morgan's body causing excruciating pain, shock, and immediate blistering to the skin on Morgan's face, back, arms, chest, ears, and hands.

24. Correctional Officer (CO) Yahary, the watch officer assigned to East Block 3, failed to respond promptly to the violence in Morgan's cell and allowed Morgan to be further assaulted and harmed by delaying action to separate Morgan from his assailant.

25. When CO Yahary called the supervisory offices, Lt. Koellmer, the third-shift supervisor, instructed CO Yahary to remove one of the inmates from the cell and place him in the dayroom.

26. Lt. Koellmer responded to East Block 3 and found J.B. in the dayroom and Morgan in his cell.

27. Morgan told Lt. Koellmer that he needed medical attention.

28. Lt. Koellmer recorded in his report of the incident that he saw "a superficial laceration" above Morgan's right eyebrow.

29. Lt. Koellmer and Lt. Hernandez forced Morgan to get dressed and then to place his burned, scalded, blistering hands behind his burned, scalded, blistering back to allow staff to routinely apply wrist restraints.

30. Morgan was not able to get dressed due to his injuries but, when CO Padin, CO Bacchus, CO Mateo, and CO Klingenberg threatened to mace him, he struggled to put on his shirt before he was handcuffed.

31. CO Padin and CO Bacchus placed Morgan's burned, scalded, blistering hands and arms in wrist-restraints and escorted Morgan to the medical unit with CO Klingenberg and CO Mateo.

32. Bubbles on Morgan's arms from the burns burst when he was handcuffed.

33. Dr. Naqvi described Morgan's injuries as 3rd and 2nd degree burns to the face, back, arms, and chest and ordered Morgan to UCONN for emergency examination and treatment.

34. CO Padin and CO Bacchus escorted Morgan to processing where Morgan's burned, scalded, blistering body was strip-searched.

35. CO Padin and CO Bacchus placed Morgan in a "trip set" consisting of wrist restraints, "black box," tether chain, leg irons, and padlock.

36. CO Boswell and CO Muscaro transported Morgan to the UCONN emergency room and returned Morgan to Cheshire CO in a trip set at approximately 10:45 am on February 23, 2017.

37. Even after UCONN advised CO Boswell and CO Muscaro that the trip set was dangerous to Morgan's medical condition, the trip set was still applied to Morgan for the transport back to CCI.

38. Immediately upon Morgan's return to CCI on the same day of his injuries, Lt. Domitrz planned to send Morgan to the RHU pending investigation.

39. However, Morgan's condition after his return from UCONN necessitated his return to the CCI medical unit.

40. CO Howard, CO Jones, and Lt. Domitrz escorted Morgan to the medical unit at CCI following his return from UCONN in wrist restraints.

41. Due to the extent of his injuries, DOC Dr. Ruiz determined that Morgan would be transferred to the Medical Burn Unit at Bridgeport Correctional Center (BCC).

42. At 11:27 am, nearly eleven hours after Morgan received 3rd degree and 2nd degree burns to his face, back, arms, chest, ears, and hands, his burned, scalded, blistering, body was placed in a trip set for the third time, this time for transport from CCI to the BCC Burn Unit.

43. CO Nogueira and CO Bugbee transported Morgan to the BCC Burn Unit in a trip set.

44. Morgan stayed at the BCC Burn Unit for approximately three weeks where he received Tylenol pain medication for his 1st, 2nd, and 3rd degree burns on his head, hands, back, torso, arms, face, and ears.

45. During Morgan's stay at the BCC Medical Burn Unit, he requested mental health counseling and but saw someone 2-3 times for a total of less than 5 minutes.

46. Morgan developed PTSD and was in severe pain during the three-weeks at the BCC Medical Burn Unit.

47. Morgan returned to CCI and was concerned for his safety which left him unable to sleep and hyper-vigilant to any movement around him.

48. At no time from the time of his injuries to his return to CCI from BCC Medical Burn Unit did Morgan receive counseling, accommodation, or assistance in filing a grievance.

49. Morgan was housed with another inmate immediately upon his return to CCI.

50. When Morgan returned to CCI, another inmate told him that he needed to file a grievance about the February 22, 2017 incident.

51. When Morgan made a request for a grievance form, he was told that there were no forms.

52. When Morgan finally obtained a form, his requests were sent back to him three times for errors informing him for example that the DOC needed more information about what Morgan wanted DOC to do or that he had sent the grievance to the wrong person or unit.

53. After Morgan re-submitted the grievance for the final time, he never heard from anyone.

54. At no time while Morgan was at the BCC Medical Burn Unit was he in a mental or physical condition capable of requesting or completing a grievance and no one offered him a form or offered to assist him in submitting a grievance.

## VIOLATIONS AND CLAIMS

**Count I - 42 U.S.C. § 1983**
**Deliberate Indifference as to Defendant Watson**

55. Paragraphs 1 through 54, above, are incorporated as pleaded.

56. As a direct result of Defendant's violation of Plaintiff's constitutional rights, Plaintiff suffered hours of intense pain and shock and he has suffered and continues to suffer intense pain, physical disfigurement, post-traumatic stress disorder (PTSD), and emotional distress reliving over and over the incident that occurred as a result of Defendant's deliberate indifference to the dangers that Plaintiff was exposed to in the cell with J.B.

57. In the manner described above, Defendant subjected the Plaintiff to cruel and unusual punishment and deliberate indifference in violation of rights secured to Plaintiff by the Eighth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

**Count II - 42 U.S.C. § 1983**
**Deliberate Indifference as to Defendant Watson**

58. Paragraphs 1 through 54, above, are incorporated as pleaded.

59. As a direct result of Defendant's violation of Plaintiff's constitutional rights, Plaintiff suffered hours of intense pain and shock and he has suffered and continues to suffer intense pain, physical disfigurement, post-traumatic stress disorder (PTSD), and emotional distress reliving over and over the incident that occurred as a result of Defendant's threat to discipline Plaintiff for requesting a move from the dangers that Plaintiff was exposed to in the cell with J.B.

60. In the manner described above, Defendant subjected the Plaintiff to cruel and unusual punishment and deliberate indifference in violation of rights secured to Plaintiff by the Eighth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

**Count III - 42 U.S.C. § 1983**
**Deliberate Indifference as to Defendants Koellmer, Hernandez, and Domitrz**

61. Paragraphs 1 through 54, above, are incorporated as pleaded.

62. As a direct result of Defendants' violation of Plaintiff's constitutional rights, Plaintiff suffered hours of intense pain and shock and he has suffered and continues to suffer intense pain, physical disfigurement, PTSD, and emotional distress reliving over and over the incident that occurred as a result of Defendant's deliberate indifference to pain inflicted upon Plaintiff by the delay in medical treatment and the excessive restraints and assault by Defendants on Plaintiff's badly burned and blistering skin.

63. In the manner described above, Defendants subjected Plaintiff to cruel and unusual punishment and deliberate indifference in violation of rights secured to Plaintiff by the Eighth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

**Count IV - 42 U.S.C. § 1983**
**Failure to Supervise as to Defendants Koellmer, Hernandez, and Domitrz**

64. Paragraphs 1 through 54, above, are incorporated as pleaded.

65. As a direct result of Defendants' violation of the Plaintiff's constitutional rights, Plaintiff suffered hours of intense pain and shock and he has suffered and continues to suffer intense pain, physical disfigurement, PTSD, and emotional distress reliving over and over the delay in his care

and medical treatment and the excessive restraints and assault on Plaintiff's badly burned and blistering skin.

66. In the manner described above, Defendant subjected the Plaintiff to cruel and unusual punishment and deliberate indifference in violation of rights secured to Plaintiff by the Eighth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

**Count V - 42 U.S.C. § 1983**
**Cruel and Unusual Punishment as to Defendants Yahary, Padin, Bacchus, Mateo, Klingenberg, Boswell, Muscaro, Howard, Jones, Nogueira, and Bugbee**

67. Paragraphs 1 through 54, above, are incorporated as pleaded.

68. As a direct result of Defendants' violation of Plaintiff's constitutional rights, Plaintiff suffered hours of intense pain and shock and he has suffered and continues to suffer intense pain, physical disfigurement, PTSD, and emotional distress reliving over and over Defendants' delay in his access to medical care and treatment and excessive restraints and assault on Plaintiff's badly burned and blistering skin.

69. In the manner described above, Defendants subjected Plaintiff to cruel and unusual punishment and deliberate indifference in violation of rights secured to the Plaintiff by the Eighth Amendment to the United States Constitution as enforced through Section 1983 of Title 42 of the United States Code.

**Count VI - 42 U.S.C. § 1983**
**Intentional Infliction of Emotional Distress as to All Defendants**

70. Paragraphs 1 through 54, above, are incorporated as pleaded.

71. Defendants intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of their conduct.

72.  Defendants' conduct was extreme and outrageous.

73. Defendants' conduct was the cause of Plaintiff's severe emotional distress.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff has suffered damages and requests this Court:

    A.    Award compensatory and punitive damages;

    B.    Award reasonable attorney's fees and costs; and

    C.    Award such other further relief as this Court may deem appropriate.

PLAINTIFF
QUAN MORGAN

BY: _____
Rachel M. Baird (ct12131)
Rachel M. Baird & Associate
15 Burlington Road
Harwinton, CT 06791
Tel: (860) 605-9340
Fax: (860) 605-9342
Email:  rbaird@rachelbairdlaw.com

*His Attorney*

Dated this 24th day of February 2020 at Harwinton, Connecticut.