UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| QUAN MORGAN, | |
|---|---|
| *Plaintiff*, | Civil No. 3:20cv254 (JBA) |
| v. | |
| | July 1, 2021 |
| CAPTAIN WATSON, *et al.*, | |
| *Defendants*, | |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

Quan Morgan (Plaintiff) brings suit against Captain Watson and fourteen other correctional staff members (Defendants) at Cheshire Correction Institution (Cheshire) for their deliberate indifference and failure to supervise Morgan's mentally-ill cellmate who poured boiling water on Morgan, causing "intense pain, physical disfigurement, PTSD, and emotional distress," in violation of the Eighth Amendment as enforced through 42 U.S.C. § 1983, cruel and unusual punishment by delaying his medical care and the inappropriate application of restraints, also in violation of the Eighth Amendment as enforced through § 1983, and intentional infliction of emotional distress. (Amend. Compl. [Doc. # 41] ¶¶ 55 – 70.) Defendants bring this motion to dismiss under the Prison Litigation Reform Act (PLRA) for Plaintiff's failure to exhaust his administrative remedies, or, in the alternative, for failing to state a claim upon which relief could be granted. (Defs.' Mot. to Dismiss [Doc. # 42].) Plaintiff opposes [Doc. # 43].

**I.  Background**

Plaintiff alleges that shortly after he was housed with inmate J.B. at Cheshire in January 2017, he saw his new roommate "sharpening a toothbrush on the window screen of the cell," announcing that "he would stab anyone who annoyed him." (Amend. Compl. ¶¶ 14-17.) Plaintiff verbally reported his safety concern about his

cellmate to Captain Watson, who declined to take any action. He then submitted a CN 9601 form on February 17, 2017 asking "that DOC move him or J.B. from the cell," and Watson replied by threatening to send Plaintiff to the Restricted Housing Unit for refusing his housing. (*Id.* ¶¶ 18-21.) No responsive measures were taken to protect Plaintiff and on February 22, 2017, "at approximately 12:45 am, while Morgan was sleeping, J.B. threw hot water from a hot pot on Morgan's body causing excruciating pain, shock, and immediate blistering to the skin on Morgan's face, back, arms, chest, ears, and hands." (*Id.* ¶ 23.) Plaintiff Morgan was transported to the UConn emergency room where he was treated for second- and third-degree burns. (*Id.* ¶¶ 33, 36.) He returned to Cheshire later that day and was immediately transferred to the Medical Burn Unit at Bridgeport Correctional Center (BCC), where he remained in recovery for three weeks. (*Id.* ¶¶ 38, 40–42, 44.)

Plaintiff claims that he sought a Level One grievance form when he returned from BCC but was informed that "there were no forms." (*Id.* ¶¶ 50-51.) After "finally obtain[ing] a form," Plaintiff alleges that his requests were "sent back to him three times for errors," at least one of which was that "the DOC needed more information about what [Plaintiff] wanted DOC to do." (*Id.* ¶¶ 52-53.) Even after resubmitting the form a fourth time, Plaintiff states that he never received a response. (*Id.* ¶ 53.)

Defendants bring this motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that Plaintiff's suit is barred because he failed to exhaust his administrative remedies as required by the PLRA. (Defs.' Mem. in Support of Mot. to Dismiss [Doc. # 42-1] at 8.) At Oral Argument held on June 8, 2021, Defendants conceded that the Court had subject matter jurisdiction over Plaintiff's constitutional claims, arguing instead that Plaintiff failed to state a claim upon which relief could be granted under Fed. R. Civ. P. 12(b)(6) because he did not properly allege administrative exhaustion. In response, Plaintiff argues that he

2

exhausted all administrative remedies available to him as the administrative process "was interrupted by the occurrence that Morgan sought to avoid through the grievance process." (Pl.'s Mem. in Opp. to Defs.' Mot. [Doc. # 43] at 5). Alternatively, Plaintiff argues that he continued the grievance process after he returned from the hospital, but that he eventually hit a dead end when his grievance was returned to him without disposition and without any avenue for appeal. (*Id.* at 8.)

## II. Legal Standard

The PLRA requires that prisoners exhaust "such administrative remedies as are available" before bringing suit under section 1983. 42 U.S.C. § 1997e(a). However, failure to exhaust is an affirmative defense, *see Jenkins v. Haubert*, 179 F.3d 19, 29 (2d Cir. 1999), and thus "[e]xhaustion of administrative remedies under the PLRA is not jurisdictional." *Cuoco v. U.S. Bureau of Prisons*, No. 98 CIV. 9009 (WHP), 2000 WL 347155, at *8 (S.D.N.Y. Mar. 31, 2000), and "is generally not amenable to resolution by way of a motion to dismiss," *Doe v. Barrett*, No. 3:01CV519(PCD), 2006 WL 3741825, at *5 (D. Conn. Dec. 19, 2006). Nevertheless, a defendant may successfully move for dismissal if failure to exhaust is evident from the face of the complaint. *Torrence v. Pesanti*, 239 F. Supp. 2d 230, 232 (D. Conn. 2003). Plaintiffs may defeat that motion by arguing that administrative remedies were practically unavailable and exhaustion therefore impossible. *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are [available - meaning] capable of use to obtain some relief for the action complained of." (internal quotations omitted)).

## III. Discussion

Plaintiff alleges four violations of the Eighth Amendment. Under Count One, Plaintiff alleges that Defendant Watson's "deliberate indifference to the dangers that Plaintiff was exposed to in the cell with J.B" resulted in "hours of intense pain and

shock, [] physical disfigurement, post-traumatic stress disorder (PTSD), and emotional distress." (Amend. Compl. ¶ 56.) For Counts Two, Three, and Four, Plaintiff claims that the remaining Defendants' deliberate indifference, failure to supervise, and cruel and unusual punishment in responding to the incident caused Plaintiff physical and emotional harm. (*Id.* ¶¶ 59, 62, 65.) Count One alleges harm directly resulting from Defendant Watson's failure to respond to Plaintiff's request for a cell change, whereas Counts Two, Three, and Four are based on Defendants' actions in response to the incident. As such, there appear to be two separate "incidents" for which Plaintiff should have initiated the grievance process – first, the imminent danger posed by his cellmate, and, second, the harm inflicted after the incident by the officers' failure to properly attend to Plaintiff's injuries.

The State of Connecticut's Administrative Procedure requires inmates to "seek informal resolution prior to filing grievance," either "verbally with the appropriate staff member . . . [or by] submit[ting] a CN 9601, Inmate Request Form." State of Conn. Dep't of Corrections, Admin. Directive 9.6.6(a)(i)(2)-(3) (effective Apr. 30, 2021). If the issue is not resolved within 15 business days after submission of a CN 9601, the inmate may submit a formal Level One grievance to the prison's administrative body. AD 9.6.6(a)(i)(8). Plaintiff alleges his attempts to exhaust administrative remedies for Count One when he describes verbally reporting his concerns to Captain Watson and submitting a CN 9601 form requesting a cell change on February 17, 2021. (Amend. Compl. ¶¶ 18-19; *see also* Pl.'s CN 9601 Inmate Request Form [Doc. # 43-2] at 1.) Before the process was begun, Plaintiff was harmed by his cellmate on February 22, 2017. (*Id.* ¶ 23.) At Oral Argument, Defendants admitted that the Administrative Directive does not include any distinct process for inmates experiencing exigent circumstances, but rather relies on the informal process that Plaintiff alleges he took advantage of by speaking to

Defendant Watson about his fears. As such, Plaintiff adequately exhausted the remedies available to him for Count One as he had no other avenue through which to raise his urgent concerns.

However, Plaintiff's claim that he exhausted his administrative remedies for Counts Two, Three, and Four is less straightforward because the harms alleged followed the incident and were not similarly time sensitive. Plaintiff alleges that he initiated the grievance process for these counts by submitting four Level One grievances to the prison after he returned from the hospital. (Amend. Compl. ¶¶ 52-53.) After the third attempt, Plaintiff states that he received a response without disposition that instructed Plaintiff to "specify the action that you think should be taken to resolve the issue you are discussing," (Returned Form, Attached Ex. D of Ex. 1 to Defs.' Mem. [Doc. # 42-2] at 35). Plaintiff argues that this returned form operated as an administrative "dead end," as there was no way for Plaintiff to effectively respond to such instruction or otherwise appeal a response without disposition. (Pl.'s Mem. at 8-9.) Defendants argue that Plaintiff's failure to respond to or otherwise appeal the response without deposition effectively concluded his administrative process. (Defs.' Mem. at 14).

The Administrative Directive states that Level One grievances may only be returned without disposition for procedural defects. AD 9.6.6(b)(2) (explaining that a grievance will be processed unless it does not comply with sections 5 and 6 of the directive). After an inmate receives a "Grievance Returned Without Disposition" form, (*see* Returned Form), which includes a checklist of six reasons for why the inmate's grievance was returned without disposition, "the inmate shall have (5) calendar days to correct the defect(s) and resubmit a request for administrative remedy." AD 9.6.6(b)(i)(2)(a)(i). If the inmate fails to effectively cure the identified defect, the grievance will be rejected and the inmate may not appeal. *Id.*

5

Because Plaintiff's Returned Form instructed him to "specify the action that you think should be taken to resolve the issue you are discussing," it appears that the prison did not believe that Plaintiff had properly complied with procedural requirement number four that "[t]he grievance and the action requested [] be stated simply and coherently." (Returned Form.) However, in his grievance, Plaintiff did specify the action requested:

> "I just would like to know why I was put in the cell with a mental health inmate. . . . I also would like to know why M.H.U. was not seeing the inmate about His meds or seeing Him on a [] basses also knowing He's done this more then 4 times to staff & Inmates."

(Level One Grievance Form, Ex. D. of Ex. 1 to Def.'s Mot. [Doc. # 42-2] at 36.) As a remedy, Plaintiff asked the prison to respond to his inquiries about why he was placed in a cell with a mentally ill inmate and why that inmate was not receiving treatment. In returning Plaintiff's grievance without disposition, the prison effectively cut him off from rest of the administrative process: he could not appeal because the grievance was returned without disposition, but he also could not resubmit his grievance as he did not know the procedural defect claimed to warrant the return of his grievance by the prison. This created a procedural dead end as Plaintiff had no practical way of obtaining relief. *See Ross*, 136 S.Ct. at 1859 ("[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.").

What is striking about this case is the simplicity of the remedy that Plaintiff sought. The Supreme Court noted in *Woodford v. Ngo* that the exhaustion requirement of the PLRA was intended to "give[] prisoners an effective incentive to make full use of the prison grievance process and accordingly provide[] prisons with a fair opportunity to correct their own errors." 548 U.S. 81, 94 (2006). Here, Plaintiff

effectively utilized the prison grievance process as intended by the PLRA, and the prison could have easily fulfilled Plaintiff's straightforward request to inform him of the circumstances which led to his injuries. However, the prison declined to do so, and Plaintiff had no further administrative remedies available to him.

Defendants may only succeed on their motion to dismiss if "failure to exhaust is readily apparent or unambiguously established from the face of the record." *Torrence*, 239 F. Supp. at 232. Plaintiff's Complaint supplies allegations of exhaustion of available administrative remedies before suit was commenced. His Complaint illustrates why the affirmative defense of failure to exhaust should usually be adjudicated at the summary judgment stage.

**IV. Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. # 42] is DENIED.

IT IS SO ORDERED.

                                      /s/
                              Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 1st day of July 2021.